IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

STEVEN D. GIBSON,
   Petitioner,

vs.           Case No.: 5:05cv159/SPM/EMT

JAMES R. McDONOUGH,
   Respondent.
_____/

## REPORT AND RECOMMENDATION

   This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 7).  Respondent filed an answer and relevant portions of the state court record (Doc. 19).  Petitioner was given an opportunity to file a reply to Respondent's answer (*see* Doc. 20), but he declined to do so.

   The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.  BACKGROUND AND PROCEDURAL HISTORY

   The procedural background of this case is undisputed by the parties and established by the state court record.  Following a jury trial in the Circuit Court for Gulf County, Florida, on January 31, 2001, Petitioner was convicted of one count of burglary of a dwelling and one count of aggravated battery (Doc. 19, Ex. B at 174, Ex. C at 36).  He was sentenced the same day to two concurrent terms of fifteen (15) years of imprisonment, but the sentences were subsequently

modified to two concurrent terms of ten (10) years of imprisonment (Doc. 7 at 3A; Doc. 19, Ex. C, Ex. D at 2).  Petitioner appealed his convictions and sentences to the Florida First District Court of Appeal (First DCA) (Doc. 19, Ex. D).  The appellate court affirmed the convictions, but reversed the sentences and remanded to the trial court for resentencing (*id.*, Ex. F).  Gibson v. State, 817 So. 2d 1084 (Fla. 1st Dist. Ct. App. June 12, 2002).

On October 15, 2002, the trial court resentenced Petitioner to two concurrent terms of seven (7) years of imprisonment followed by concurrent terms of eight (8) years of probation (Doc. 7 at 3A–3B; Doc. 19, Ex. G).  Petitioner filed a notice of appeal,  and while the appeal was pending Petitioner filed a motion to correct sentencing error pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (*id.*, Ex. I at 1–32).  On June 9, 2003, the trial court granted the motion and modified the sentences to two concurrent terms of seven (7) years of imprisonment followed by three (3) years of probation (*id.* at 33–39).  Petitioner's appellate counsel filed a brief asserting that counsel was unable to make a good faith argument that reversible error occurred in the trial court, in accordance with Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (*id.*, Ex. J).  The appellate court affirmed the modified sentences per curiam without opinion on March 3, 2004, with the mandate issuing March 30, 2004 (*id.*, Ex. K).  Gibson v. State, 869 So. 2d 544 (Fla. 1st Dist. Ct. App. Mar. 3, 2004) (Table).

On December 23, 2003, while the appeal of his new sentences was pending, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 19, Ex. N).  The trial court denied the motion on November 16, 2004 (*id.*, Ex. L).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the decision per curiam without written opinion on June 3, 2005, with the mandate issuing June 29, 2005 (*id.*, Ex. O).  Gibson v. State, 903 So. 2d 939 (Fla. 1st Dist. Ct. App. June 3, 2005) (Table).

Petitioner filed the instant habeas action on July 28, 2005 (*see* Doc. 1 at 6).  Respondent concedes that the petition was timely filed (Doc. 19 at 4).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As

the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[1]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing

---

[1]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99, 120 S. Ct. at 1499–1503, 1511–16); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13, 120 S. Ct. at 1518–23).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343–45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting

Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that [the state court] judgment is infected by constitutional error."  Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."  Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent.  Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-

court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835–36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) ("[Petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record.")).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

A.   Ground One:  Deprivation of right secured by the Sixth Amendment to the United States Constitution to the effective assistance of counsel through trial counsel's error in failing to make a[n] adequate motion for judgment of acquittal at the close of the State's case in chief.

(Doc. 1 at 4).  Petitioner claims that his trial counsel provided ineffective assistance by failing to make an adequate motion for judgment of acquittal as to the burglary charge (*id.* at 4A(a)). Petitioner specifically argues that his counsel should have argued that there was no evidence from which the jury could infer that Petitioner formed the intent to commit an assault or battery prior to entering the dwelling (*id.* at 4A(b–c)).  Petitioner contends that there is a reasonable probability that if counsel had argued the motion as suggested by Petitioner, the trial court would have granted it (*id.* at 4A(c)).

Respondent concedes that Petitioner exhausted his claim in the state courts (Doc. 19 at 5).

1.   Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, a habeas petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.*  It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result

thereof.  *Id.* at 687.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

In determining whether counsel's performance was reasonable, the Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  *Cf.* Engle v. Isaac, 456 U.S. 107, 133–134, 102 S. Ct. 1558, 1574–1575, 71 L. Ed. 2d 783 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  *See* Michel v. Louisiana, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Strickland, 466 U.S. at 693.  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

### 2.   Federal Review of State Court Decision

Petitioner presented his ineffective assistance of counsel claim in his Rule 3.850 motion (Doc. 19, Ex. N at 3–7). The state court analyzed Petitioner's claim under the two-pronged Strickland standard (*see id.*, Ex. L at 33). Because the state court explicitly identified and applied the Strickland standard, and the state court did not reach a decision different from the Supreme Court in a case with indistinguishable facts, Petitioner cannot show the state court decision was "contrary to" Strickland. Therefore, Petitioner is entitled to federal habeas relief only if he establishes the state court's denial of his claim was objectively unreasonable.

In denying this claim in Petitioner's Rule 3.850 motion, the state court concluded that defense counsel's motion for judgment of acquittal was sufficient, and even if counsel had made a more detailed motion, it would have been denied because the evidence was sufficient to support the burglary charge (Doc. 19, Ex. L at 33).

Upon review of the record, this court finds that sufficient competent evidence was presented at trial from which any rational trier of fact could have found the essential elements of burglary of a dwelling beyond a reasonable doubt. Under Florida law in effect in 1999, the State was required to prove the following elements to support a conviction for burglary:

1.      Petitioner entered a structure owned by or in the possession of (in this case, Heather Gibson, the alleged owner/possessor of the structure).

2.      Petitioner did not have the permission or consent of Ms. Gibson, or anyone authorized to act for her, to enter the structure at the time.

3.      At the time of entering the structure Petitioner had a fully-formed, conscious intent to commit the offense of assault or battery in that structure.

*See* Fla. Stat. § 810.02; *see also* The Florida Bar 1998 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition Part Two:  Instructions on Crimes, Chp. 13 Burglary, para. 13.1 Burglary.

The elements of assault are the following:  (1) Petitioner intentionally and unlawfully threatened, either by word or act, to do violence to another, (2) at the time, Petitioner appeared to have the ability to carry out the threat, and (3) Petitioner's act created in the mind of the victim a well-founded fear that the violence was about to take place.  *See* Fla. Stat. § 784.011; *see also* The Florida Bar 1998 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition Part Two: Instructions on Crimes, Chp. 8 Assault and Battery, para. 8.1 Assault.

The elements of battery are the following:  (1) Petitioner intentionally touched or struck the victim against his/her will, and (2) Petitioner intentionally caused bodily harm to the victim.  *See* Fla. Stat. § 784.03; *see also* The Florida Bar 1998 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition Part Two:  Instructions on Crimes, Chp. 8 Assault and Battery, para. 8.3 Battery.

The jury instructions for burglary further provide:

Proof of the entering of a structure stealthily and without the consent of the owner or occupant may justify a finding that the entering was with the intent to commit a crime if, from all the surrounding facts and circumstances, you are convinced beyond a reasonable doubt that the intent existed.
. . . .
The intent with which an act is done is an operation of the mind and, therefore, is not always capable of direct and positive proof.  It may be established by circumstantial evidence like any other fact in a case.

Even though an unlawful entering a structure is proved, if the evidence does not establish that it was done with the intent to commit assault or battery, the defendant must be found not guilty.

*See* Fla. Stat. § 810.02; *see also* The Florida Bar 1998 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition Part Two:  Instructions on Crimes, Chp. 13 Burglary, para. 13.1 Burglary.

At trial, the State presented testimony of Heather Gibson.  She testified that at the time of the burglary on April 23, 1999, she was living at Pine Ridge Apartments (Doc. 19, Ex. B at 19–21). She stated that she and Petitioner were married at the time, but they had separated one month prior to the burglary, and he had moved out of the apartment and given her his key to the apartment (*id.* at 20–22).  Ms. Gibson testified that she was not aware of the existence of more than two keys to the apartment, hers and the key that Petitioner returned to her (*id.* at 24–25).  Ms. Gibson testified that she began dating Randall Chancey approximately two weeks prior to the burglary (*id.* at 23–25). She stated that on the night of the robbery, she and Mr. Chancey were watching television and heard a knock on the door at approximately 12:30 a.m. (*id.* at 27–28).  Ms. Gibson attempted to look through the peep hole of the door, but it had been covered with tape (*id.* at 28).  She did not answer the door, and the knocking continued (*id.*).  When the knocking finally stopped, she opened the door, removed the tape from the peep hole, and looked around, but did not see anyone (*id.* at 28–29).  She and Mr. Chancey went to bed shortly thereafter (*id.* at 29).

Ms. Gibson testified that she was later awakened by the feeling of someone on top of her, and the person struck her on the top of her head (*id.* at 29).  The room was dark, so she could not see who it was, but she could hear fighting and rolling around (*id.* at 29–32).  Ms. Gibson testified that in order to get to the bedroom from the front door, a person had to pass the kitchen, turn right down a hallway, and turn right into her bedroom (*id.* at 30–31).  Ms. Gibson stated that when the light was turned on, she saw Mr. Chancey and Petitioner standing up fighting, and then they went onto the floor (*id.* at 33).  The two continued fighting down the hallway, out the front door, and into the parking lot (*id.* at 34).  Ms. Gibson testified that she was upset and frightened (*id.* at 35).  When the two men reached the parking lot, Petitioner went back into the apartment and threw Mr. Chancey's clothing out of the apartment; at that point, Ms. Gibson locked the apartment door so that Petitioner could not re-enter (*id.*).  Ms. Gibson testified that she had not invited Petitioner to her apartment, and he was not otherwise there with her permission  (*id.* at 35–36).  She stated that she received a bump on her head as a result of Petitioner's hitting her when he was on top of her (*id.* at 36–37).

Randall Chancey testified that he locked the front door of Ms. Gibson's apartment before they went to bed (*id.* at 53). He stated that he awoke to see a man sitting on top of Ms. Gibson and hitting him in his ear (*id.* at 53–56). Mr. Chancey grabbed the man, and they started wrestling (*id.*). They wrestled to the foot of the bed and then split apart (*id.*). Mr. Chancey then charged the man and knocked him to the ground (*id.*). The intruder continued to hit Mr. Chancey in his head and back, and Mr. Chancey realized he was bleeding (*id.*). While the intruder was hitting Mr. Chancey, the intruder yelled at him that Ms. Gibson was his wife, and Mr. Chancey then recognized the man as Petitioner (*id.* at 56). When Mr. Chancey realized he was bleeding, he left the apartment and went to his truck in the parking lot (*id.* at 56–57). Petitioner then came out of the apartment and threw Mr. Chancey's clothes at him (*id.* at 57). Mr. Chancey testified that he went to the hospital, and the medical staff recommended stitches, but he declined (*id.* at 58). He stated that two years after the incident, he still had scars on his face, forehead, head, shoulder, and back as a result of the blows to his head and body (*id.* at 59).

James Hersey, a police officer with the St. Joe Police Department, testified that he investigated the incident on April 23, 1999 (*id.* at 65–68). He testified that he first spoke to Mr. Chancey at his mother's house (*id.* at 66–68). He then went with Deputy Farmer to Ms. Gibson's apartment, and when he arrived at the apartment, he observed blood in the bedroom, outside the bedroom, on the carpet, and down the steps (*id.* at 68–69). After obtaining information from Ms. Gibson, he and Officer Farmer located Petitioner at his parents' house, where Ms. Gibson told them he was staying (*id.* at 71). When they arrived at Petitioner's parents' house, Petitioner was standing outside, and Officer Hersey observed what appeared to be blood on his pants and hands, as well as abrasions on this hands (*id.* at 71). Officer Hersey arrested Petitioner and discovered a "Gerber" tool, which is a combination pliers, knife, saw, and screw driver, on Petitioner's person (*id.* at 72). Officer Hersey testified that after he advised Petitioner of his legal rights, Petitioner made a recorded statement in which he admitted he used the Gerber tool while he was in Ms. Gibson's apartment (*id.* at 80–81). On cross-examination, Officer Hersey testified that he believed Petitioner stated that there had been contact between him and Ms. Gibson prior to the incident, and Petitioner indicated that he believed he had a right to be in the apartment that night (*id.* at 82).

The evidence viewed in a light most favorable to the State, including evidence that Petitioner and Ms. Gibson were recently separated, that earlier that evening someone sought entry into the apartment but did not wish to be identified by her, that Ms. Gibson had not given Petitioner permission to enter the apartment, that Petitioner entered the apartment when it was silent and the victims were asleep, that Petitioner initiated the attack in the dark, that he carried a tool with him that he used to attack Mr. Chancey, that he sat on Ms. Gibson while he accosted Mr. Chancey, and that Mr. Chancey was bloodied and scarred by the attack, is sufficient to permit a rational juror to conclude beyond a reasonable doubt that Petitioner entered Ms. Gibson's apartment without permission or consent, and at the time of entering the dwelling, Petitioner had a fully-formed, conscious intent to threaten to do violence to Ms. Gibson or Mr. Chancey, and he appeared to have the ability to carry out the threat, and his act created in the mind of Ms. Gibson or Mr. Chancey the a well-founded fear that the violence was about to take place, or Petitioner had a fully-formed, conscious intent to touch or strike Ms. Gibson or Mr. Chancey her/his will, and he intentionally caused bodily harm to at least one of them.  Since a rational trier of fact could have found guilt beyond a reasonable doubt, the undersigned concludes that Petitioner failed to establish a reasonable probability that a motion for judgment of acquittal on the burglary charge would have been granted if counsel had specifically argued that there was no evidence of intent.  The state court decision was not based upon an unreasonable determination of the facts, nor was it an unreasonable application of <u>Strickland</u>; therefore, Petitioner is not entitled to federal habeas relief.

> B. <u>Ground Two:  Deprivation of rights secured by the Sixth Amendment to the United States Constitution to the effective assistance of counsel through counsel's failure to argue, and request a jury instruction on, a heat of passion defense as to the aggravated battery charge.</u>

(Doc. 7 at 4).  Petitioner claims that although his defense counsel pursued a self-defense theory of defense, his only defense to the aggravated battery charge involving Mr. Chancey was that Petitioner acted in the "heat of passion" (*id.* at 4B(a–c)).  Petitioner contends that a reasonable probability exists that he would have been acquitted of the aggravated battery charge if counsel had pursued a "heat of passion" defense and requested a jury instruction on that defense (*id.* at 4B(c–d)).

Respondent concedes that Petitioner exhausted his claim in the state courts (Doc. 19 at 11).

        1.      Clearly Established Supreme Court Law

The Supreme Court law applicable to claims of ineffective assistance of counsel is set forth *supra*.

        2.      Federal Review of State Court Decision

Petitioner presented his ineffective assistance of counsel claim in his Rule 3.850 motion (Doc. 19, Ex. N at 8–13).  The state court analyzed Petitioner's claim under the two-pronged Strickland standard (*see id.*, Ex. L at 33).  Because the state court explicitly identified and applied the Strickland standard, and the state court did not reach a decision different from the Supreme Court in a case with indistinguishable facts, Petitioner cannot show the state court decision was "contrary to" Strickland.  Therefore, Petitioner is entitled to federal habeas relief only if he establishes the state court's denial of his claim was objectively unreasonable.

In denying this claim in Petitioner's Rule 3.850 motion, the state court concluded that "heat of passion" is not a defense to aggravated battery (Doc. 19, Ex. L at 33).

Petitioner may succeed on this claim only if this court concluded that the state courts misinterpreted state law, a conclusion that this court may not make.  *See* Herring v. Secretary, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'"); Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law]—the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Furthermore, under Florida law, "heat of passion" is available as a defense to attempted homicide and homicide; *see* Fla. Stat. § § 782.03; *see also* The Florida Bar 1998 Florida Standard Jury Instructions in Criminal Cases, Fourth Edition Part Two:  Instructions on Crimes, Chp. 6 Attempted Homicide, para. 6.1 Introduction to Attempted Homicide, Chp. 7 Homicide, para. 7.1

Introduction to Homicide, but Petitioner has offered no legal authority showing that it is a defense to battery or aggravated battery.

Because a "heat of passion" defense was not a legally recognized defense to aggravated battery, Petitioner failed to show that his counsel performed deficiently by failing to pursue this defense. Furthermore, Petitioner failed to show a reasonable probability that the trial court would have granted counsel's request for a "heat of passion" instruction if counsel had requested one. Therefore, the state court decision denying this ineffective assistance of counsel claim was not unreasonable.

      C.    <u>Ground Three:  Deprivation of rights secured by the Fourteenth Amendment of the United States Constitution to due process of law through trial court error in failing to define stealthily entry [sic] in standard burglary jury instruction that negated the State's burden of proof, denying Petitioner a fair trial by jury.</u>

(Doc. 7 at 5).  Petitioner claims that the trial court erred in failing to define "stealthily" as the term was used in the jury instruction on burglary.  He contends that the trial court's failure to define "stealthily" left the jury to speculate as to the meaning of the term and thereby relieved the State of its burden of proof (*id.* at 5A–5C).

Petitioner raised this claim in his Rule 3.850 motion (*see* Doc. 19, Ex. N at 13–15).  The trial court determined that the claim was procedurally barred because Petitioner could or should have raised the issue on direct appeal (*id.*, Ex. L at 33).  Alternatively, the state court denied the claim on the merits (*id.*).  The First DCA affirmed per curiam the trial court's denial of these claims (Doc. 19, Ex. O).

Although Petitioner acknowledges that the state court applied a procedural bar to the claim (*see* Doc. 7, supporting memorandum at 24–25), and the record shows that the state court correctly applied the procedural bar, thereby precluding Petitioner from federal review of the merits of his claim,[2] Respondent did not assert a procedural bar defense in its answer to the petition (*see* Doc. 19 at 17–22).  In light of Respondent's waiver of this defense, this court must review the merits of the claim.  *See* <u>Romine v. Head</u>, 253 F.3d 1349, 1364 (11th Cir. 2001) (the State waived any procedural

---

[2]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995); <u>Alderman v. Zant</u>, 22 F.3d 1541 (11th Cir. 1994).

bar as to habeas petitioner's claim where the State did not assert a procedural bar to the specific claim in the district court).

       1.      Clearly Established Supreme Court Law

In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement.  *See* <u>Sandstrom v. Montana</u>, 442 U.S. 510, 520–521, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).  Nonetheless, not every ambiguity or deficiency in a jury instruction rises to the level of a due process violation.  The question is "'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'"  <u>Estelle v. McGuire</u>, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)).  "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'"  <u>Boyde v. California</u>, 494 U.S. 370, 378, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990) (quoting <u>Cupp</u>, *supra*, 414 U.S. at 146–147).  If the charge as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."  <u>Estelle</u>, *supra*, 502 U.S. at 72 (quoting <u>Boyde</u>, *supra*, 494 U.S. at 380).

       2.      Federal Review of State Court Decision

In the written decision denying Petitioner's claim, the state court determined that the claim was without merit because the allegedly ambiguous instruction was approved by the Florida Supreme Court (*see* Doc. 19, Ex. L at 33).  Because it is unclear whether the state court assessed whether the allegedly ailing instruction so infected the entire trial that the resulting conviction violated due process, the undersigned will review the claim de novo.

The record shows that the overall charge to the jury included the following instructions:

> Before you can find the Defendant guilty of burglary, the State must prove the following three elements beyond a reasonable doubt.  One, Mr. Gibson entered a structure owned by or in the possession of Heather Gibson.  Two, Mr. Gibson did not have the permission or consent of Heather Gibson or anyone authorized by her to enter the structure at that time.  And three, at the time of entering the structure, Mr. Gibson had a fully formed conscious intent to commit the offense of assault or battery.
>
> . . . .

Proof of entering a structure stealthily and without the consent of the owner or occupant may justify a finding that the entering was with the intent to commit a crime if from all the other surrounding facts and circumstances you were convinced beyond a reasonable doubt that such intent  existed.  The intent with which an act is done is an operation of the mind and therefore is not always capable of direct and positive proof.  It maybe [sic] established by circumstantial evidence like any other fact in the case.

Even though an unlawful entering a structure is proved, if the evidence does not establish that it was done with the intent to commit either assault or battery, the Defendant must be found not guilty.
. . . .

The Defendant has entered a plea of not guilty.  This means that you must presume or believe the Defendant is innocent.  The presumption stays with the Defendant as to each material allegation of the information from the trail [sic] until it has been overcome by the evidence with the exclusion of a reasonable doubt.  To overcome the Defendant's presumption of innocence, the State has the burden of proving the following two elements.  One, the crime of which the Defendant is charged was committed and two, the Defendant is the person who committed that crime.  The Defendant is not required to prove anything.

Whenever the words reasonable doubt are used, you should consider the following.  A reasonable doubt is not a possible doubt, speculative, imaginary or forced doubt.  Such a doubt must not influence you to return a verdict of not guilty if you have an abiding conviction of guilt.  On the other hand if after carefully considering and weighing all the evidence there is not abiding conviction of guilt or without any conviction is one which is not stable but waivers or vacillates, then the charge is not proved beyond a reasonable doubt and you must find the Defendant not guilty because the doubt is reasonable.  It is to be [sic] evidence introduced during the course of this trial and it alone that you are to look for that proof.

A reasonable doubt as to the guilt of the Defendant may arise from the evidence, conflict in the evidence or the lack of evidence.  If you have a reasonable doubt, you should find the Defendant not guilty.  If you have no reasonable doubt, then you should find him guilty.
. . . .

You must follow the law as it is set out in these instructions.  If you fail to follow the law, your verdict would be a miscarriage of justice. . . . This case must be decided only upon the evidence that you have heard from the witnesses and seen in the form of exhibits in evidence and these instructions.

(Doc. 19, Ex. B at 162–64, 167–68, 170).

Initially, Petitioner's assertion that the word "stealthily" is a legal term and an essential, material element of the crime of burglary is completely devoid of factual or legal support. Furthermore, Petitioner has failed to provide any factual support for his assertion that the jurors did not know the meaning of "stealthily" or were in any way confused by the term.  Moreover, the fact that the instruction did not define "stealthily" did not render the jury instructions ambiguous with regard to the elements of burglary, including the intent element, and that it was the State's burden to prove beyond a reasonable doubt that Petitioner acted with the requisite intent.  The trial court fully instructed the jury as to the intent element and made it clear that the State was required to put forth evidence that convinced the jury beyond a reasonable doubt that Petitioner entered Ms. Gibson's apartment with the intent to commit an assault or battery.  Although the instruction stated that intent could be established through circumstantial evidence, the instruction emphasized that the jury could convict Petitioner only if the circumstantial evidence convinced them beyond a reasonable doubt that Petitioner entered the apartment with the intent to commit an assault or battery, and that  if the evidence did not establish that Petitioner entered with the intent to commit either assault or battery, the jury must find him not guilty.  Finally, the overall charge to the jury, including the instructions regarding intent, reasonable doubt, the presumption of innocence, the State's burden of proof, and the jury's duty to follow the jury instructions, was unambiguous in instructing the jury that they could not convict Petitioner of burglary unless the State presented evidence that convinced them beyond a reasonable doubt that Petitioner entered the apartment with the intent to commit an assault or battery.  Because Petitioner has failed to establish that the jury instruction was ambiguous or otherwise deficient with respect to the intent element of the burglary charge, or that the overall charge was ambiguous with regard to the elements of burglary or the burden of proof as to each element, Petitioner is not entitled to federal habeas relief.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 7) be **DENIED**.

At Pensacola, Florida, this 23rd day of February 2007.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).